NANCY SOBOCINSKI *v.* FREEDOM OF INFORMATION COMMISSION
(13703)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued October 11—decision released November 28, 1989

*Lawrence Russ,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellant (intervening defendant).

*Bruce Levin,* with whom, on the brief, was *Robert C. Pinciaro,* for the appellee (plaintiff).

*Victor Perpetua,* commission counsel, for the appellee (defendant).

COVELLO, J. This is an appeal from a decision of the Superior Court which held that the defendant freedom of information commission (FOIC) erred in dismissing the plaintiff's complaint. The dispositive issue is whether the Freedom of Information Act, in General Statutes § 1-19b (b),[1] prohibits disclosure of information or documents to parties involved in pending litigation with the state or its agencies. As the issue has become moot while the appeal here was pending, we order that appeal dismissed and the judgment of the

[1] General Statutes (Rev. to 1987) § 1-19b (b) provided: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be deemed in any manner to affect the status of judicial records as they existed prior to October 1, 1975, nor affect the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state."

Superior Court vacated, and we remand the case to that court with direction to render a judgment of dismissal of the appeal from the FOIC's decision.

The relevant facts are undisputed. On or about July 7, 1986, the plaintiff, Nancy Sobocinski, pursuant to General Statutes § 13a-144,[2] filed suit against the intervening defendant, J. William Burns, commissioner of transportation, in connection with a motor vehicle collision. In her suit the plaintiff alleged, inter alia, that

[2] General Statutes (Rev. to 1985) § 13a-144 provided: "DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the trav-

the overhead traffic control signals at the intersection of the Boston Post Road and Lambert Road in Orange were not functioning and that the state knew or should have known that the signals were not operating and should have taken corrective measures.

By interrogatories and requests for production dated September 11, 1986, the plaintiff requested the commissioner to produce copies of all documents relating to failures or malfunctions of the overhead traffic signals at the Boston Post Road and Lambert Road intersection between August 1, 1974, and August 1, 1984. The plaintiff also submitted an interrogatory asking whether on August 1, 1984, the commissioner or any department of transportation agents, servants or employees had any procedure in place whereby they would be notified if there were malfunctions of traffic control signals over which they had control and maintenance responsibility.

On September 23, 1986, the commissioner filed notice in the trial court of his objections to the plaintiff's September 11 interrogatories and requests for production. On October 13, 1986, the plaintiff made a written request to the commissioner, pursuant to the Freedom of Information Act (FOIA), General Statutes § 1-18a et seq., requesting essentially the same documents the plaintiff had requested in her September 11 discovery requests.[3] On November 7, 1986, the commissioner filed a motion for a protective order with the trial court, seeking to be relieved of the obligation to produce the

eled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

[3] Specifically, the plaintiff requested that the commissioner provide her with copies of: (a)"All documents relating to failures or malfunctions of the overhead traffic control signals at the intersection of the Boston Post Road and Lambert Road . . . between August 1, 1974 and August 1,

documents requested in the plaintiff's September 11 discovery request. On November 24, 1986, the motion was argued and denied. The trial court found that there was no need for a protective order since there had been no hearing on the commissioner's objections and thus he was as yet under no obligation to comply with the plaintiff's discovery requests.

On November 12, 1986, on the advice of counsel, the commissioner denied the plaintiff's October 13 request, made pursuant to the FOIA, on the ground that the request referred to pending litigation. On December 8, 1986, the plaintiff filed a complaint against the commissioner with the FOIC challenging the commissioner's denial of her request for the documents and seeking to compel their production. On February 26, 1987, a full contested hearing on the matter was conducted before the FOIC. On April 8, 1987, the FOIC dismissed the plaintiff's complaint, concluding that the commissioner's failure to produce the records sought by the plaintiff in her October 13, 1986 request did not violate General Statutes §§ 1-15 or 1-19 (a),[4] and that

1984"; and (b)"Documents, inter–office memos, policy statements or any writings related to the method or procedure for traffic control in the event of an electrical power failure to overhead traffic control signals controlled by [the commissioner], including but not limited to the traffic control signals at the intersection of the Boston Post Road and Lambert Road . . . in 1984."

[4] General Statutes (Rev. to 1987) § 1-15 provided: "APPLICATION FOR COPIES OF PUBLIC RECORDS. CERTIFIED COPIES. FEES. Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. The fee for any copy provided in accordance with this section and sections 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall not exceed twenty-five cents per page. If any copy provided in accordance with said sections requires a printout or transcription, or if any person applies for a printout or transcription of a public record, the fee for such printout or transcription shall not exceed the cost thereof to the public agency. A public agency may require the prepayment of any fee required or permitted under this chapter if such fee is estimated to be ten dollars or more. The sales tax provided in chapter 219 shall not be imposed upon any transaction for which a fee is required or permissible under this

he was exempted from disclosing the requested documents under § 1-19b (b) since the production of the records requested would affect the rights of litigants under the laws of discovery of this state.

On April 22, 1987, pursuant to General Statutes §§ 1-21i (d) and 4-183,[5] the plaintiff appealed the deci-

section or section 1-21c. The public agency shall waive any fee provided for in this section when (1) the person requesting the records is an indigent individual, (2) the records located are determined by the public agency to be exempt from disclosure under subsection (b) of section 1-19, or (3) in its judgment, compliance with the applicant's request benefits the general welfare. Except as otherwise provided by law, the fee for any person who has the custody of any public records or files for certifying any copy of such records or files, or certifying to any fact appearing therefrom, shall be for the first page of such certificate, or copy and certificate, one dollar; and for each additional page, fifty cents. For the purpose of computing such fee, such copy and certificate shall be deemed to be one continuous instrument."

General Statutes (Rev. to 1987) § 1-19 (a) provided: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

[5] General Statutes (Rev. to 1987) § 1-21i (d) provided: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a juris-

sion of the FOIC to the Superior Court. The commissioner intervened in the administrative appeal as an additional defendant. On December 7, 1988, the trial court ruled that granting the plaintiff's request would not affect the rights of the litigants under the state's discovery laws. The court concluded that the FOIC had erred in dismissing the plaintiff's complaint, and

dictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. Notwithstanding the provisions of section 3-125, legal counsel employed or retained by said commission shall represent said commission in all such appeals and in any other litigation affecting said commission. Notwithstanding the provisions of subsection (b) of section 4-183 and section 52-64, all process shall be served upon said commission at its office. Any appeal taken pursuant to this section shall be privileged in respect to its assignment for trial over all other actions except writs of habeas corpus and actions brought by or on behalf of the state, including informations on the relation of private individuals. Nothing in this section shall deprive any party of any rights he may have had at common law prior to January 1,1958. If the court finds that any appeal taken pursuant to this section or section 4-183 is frivolous or taken solely for the purpose of delay, it shall order the party responsible therefor to pay to the party injured by such frivolous or dilatory appeal costs or attorney's fees of not more than one thousand dollars. Such order shall be in addition to any other remedy or disciplinary action required or permitted by statute or by rules of court."

General Statutes (Rev. to 1987) § 4-183 provided: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

"(b) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-New Britain within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after mailing of the notice of the decision thereon. Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty

remanded the case for further proceedings consistent with its decision. On January 13, 1989, the defendant commissioner appealed to the Appellate Court. We then transferred the matter to ourselves pursuant to Practice Book § 4023. On October 3, 1989, while this appeal was pending, the plaintiff withdrew her underlying civil action against the commissioner.

days after mailing of the notice of the decision thereon, except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford.

"(c) The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms.

"(d) Within thirty days after the service of the petition, or within such further time as may be allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding appealed from, which shall include the agency's findings of fact and conclusions of law, separately stated. By stipulation of all parties to such appeal proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs. The court may require or permit subsequent corrections or additions to the record.

"(e) If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.

"(f) The appeal shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory

Where the actions of the parties themselves cause a settling of their differences, the case becomes moot. See, e.g., *Heitmuller* v. *Stokes,* 256 U.S. 359, 362–63, 41 S. Ct. 522, 65 L. Ed. 990 (1921); *Nader* v. *Altermatt,* 166 Conn. 43, 56, 347 A.2d 89 (1974); *Southbury* v. *American Builders, Inc.,* 162 Conn. 633, 634, 295 A.2d 566 (1972). Mootness applies to situations where events have occurred during the pendency of an appeal that make an appellate court incapable of granting practical relief through a disposition on the merits. *State* v. *Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 181, 527 A.2d 688 (1987). It is well settled that the existence of an actual controversy is an essential requisite to appellate jurisdiction. See *State* v. *Smith,* 207 Conn. 152, 178, 540 A.2d 679 (1988); *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985); *State* v. *Nardini,* 187 Conn. 109, 111–12, 445 A.2d 304 (1982); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 249, 440 A.2d 310 (1982); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411

provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"(h) Upon all such appeals which are denied, costs may be taxed in favor of the prevailing party at the discretion of the court, but no costs shall be taxed against the state.

"(i) In any case in which an aggrieved party claims that he cannot pay the costs of an appeal under this section and will thereby be deprived of a right to which he is entitled, he shall, within the time permitted for filing the appeal, file with the clerk of the court to which the appeal is to be taken an application for waiver of payment of such fees, costs and necessary expenses, including the requirements of bond, if any. The application shall conform to the requirements of section 28A of the Practice Book. After such hearing as the court determines is necessary, the court shall enter its judgment on the application, which judgment shall contain a statement of the facts the court has found, with its conclusions thereon. The filing of the application for the waiver shall toll the time limits for the filing of an appeal until such time as a judgment on such application is entered."

A.2d 1 (1979); *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944). An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. *Southbury* v. *American Builders, Inc.,* supra, 634. This court will not decide moot questions where there is no actual controversy or where no actual or practical relief can follow from their determination. *Shays* v. *Local Grievance Committee,* supra, 571; *Waterbury Hospital* v. *Connecticut Health Care Associates,* supra, 249–50; *Scalo* v. *Mandanici,* 179 Conn. 140, 146–47, 425 A.2d 1272 (1979); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974).

The plaintiff argues, however, that the instant proceeding involves a moot question that is "capable of repetition, yet evading review." See *Weinstein* v. *Bradford,* 423 U.S. 147, 148–49, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975); *CEUI* v. *CSEA,* 183 Conn. 235, 249, 439 A.2d 321 (1981). In *Delevieleuse* v. *Manson,* 184 Conn. 434, 437, 439 A.2d 1055 (1981), we stated that this principle was not the sole justification for reviewing an admittedly moot case but was merely one factor to be considered when faced with a potentially moot matter. We identified other relevant factors, including: (1) the public importance of the question presented; (2) whether an ongoing program of the state's penal or civil system is affected; and (3) whether the plaintiff could be affected similarly in the future. Id.; see also *Shays* v. *Local Grievance Committee,* supra, 572–73; *Waterbury Hospital* v. *Connecticut Health Care Associates,* supra, 253 n.5.

After considering these factors we are not persuaded that this case merits review. Since this action involves a now-withdrawn personal injury claim arising out of a single discrete automobile accident we are unable to discern any ongoing program that is affected. Because

of the nature of the cause of action, we are further unable to discern how the plaintiff herself could be affected similarly in the future, and there is nothing in the record to suggest that its repetition in the future would be probable. We conclude, therefore, that the question raised does not fall within the exception articulated in *Delevieleuse* v. *Manson,* supra.

The commissioner's appeal is dismissed, the judgment of the trial court is vacated and the case is remanded to that court with direction to dismiss the plaintiff's appeal for mootness.

