[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Robert Newell, has appealed a final decision of the Commissioner of Motor Vehicles suspending his operator's license for a period of six months for refusing to take a breath test. The plaintiff's ex parte motion to vacate and stay the suspension order was granted by Judge Susco on March 3, 1991 "pending a hearing." On April 22, 1991, Judge Susco sustained the defendant's objection to request for stay. On May 15, 1991, the plaintiff filed a motion for reconsideration which states in part that "the plaintiff's license has been placed under suspension and the failure to grant a stay . . . will render this appeal moot as it will not be held within the ambit of the suspension." This as well as a subsequent motion were denied and the six month suspension therefore was effective as of April 22, 1991, terminating on October 22, 1991.
Before addressing the claims made by the plaintiff in his initial brief, the court must first consider the claim of mootness since the suspension period has expired and the plaintiff is entitled to reinstatement. CT Page 10304
"It is a well-settled rule that the existence of an actual controversy is requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (citations omitted) Phaneuf v. Commissioner of Motor Vehicles, 166 Conn. 449, 452, 342 A.2d 291 (1974). In Phaneuf, the plaintiff's license had been suspended as a result of his involvement in a fatal automobile accident. The court held that since the plaintiff's license had been returned, the case was moot, Id. at 451, 452 . . . The court focused on the fact that a suspension by the defendant "did not have the effect of a conviction" nor did it result in points being assessed against the plaintiff's record. Id. The same is true in the instant case.
The plaintiff claims that he is entitled to have his appeal decided upon the merits since increased administrative penalties will attach if he is subsequently stopped and processed for violation of 14-227a, operation while under the influence. General Statute 14-227a, subsection (h)[1]
provides for a six month suspension for a first time refusal to take the test and a one year suspension if a second time refusal or test failure.
The mere fact that the suspension could result in a higher penalty for a second offense does not mean the case is not moot. See Parker v. Ellis, 362 U.S. 574 (1960); Whiteside v. Burlant, 153 Conn. 204,215 A.2d 100 (1965). In the instant case, the suspension is not the same as a criminal conviction. There is no attendant loss of voting rights, nor does it affect plaintiff's credibility as a witness, nor does it subject him to increased criminal penalties in the event of a subsequent criminal conviction. CT Page 10305
In addition, no points are assessed against his driving record. Thus, there is no attendant effect on his insurance costs. Neither is there the danger that his license will be suspended simply by the addition of points to his record. See, Young v. Tyman, 148 Conn. 456, 459.
In reality, the plaintiff is not subject to any "collateral consequences" at the present time. He will only be affected to the extent he chooses to again drive under the influence of alcohol or drugs and, upon being stopped by the police, either refuses to take a blood alcohol test or fails one. Thus, the plaintiff is in the position to avoid any consequence from this suspension simply by obeying the law and conforming his behavior to societal standards.
There is currently nothing this court can do for the plaintiff, other than that which the plaintiff can do for himself. His license will be reinstated upon his application to the Department of Motor Vehicles. And to the extent there are any additional potential consequences, he can avoid them through his own actions.
The plaintiff is not entitled to review on a moot question that is "capable of repetition, yet evading review." see Sobocinski v. Freedom of Information Commission, 213 Conn. 126. Relevant factors to be considered for such review are (1) the public importance of the question presented; (2) whether an ongoing program of the state's penal or civil system is affected; and (3) whether the plaintiff could be affected similarly in the future. Sobocinski, supra 135.
Courts, legislators, editors and members of the public continue to lament the slaughter on the highways and the changes presented by individuals who operate while under the influence. In upholding the constitutionality of Michigan's use of highway sobriety checkpoints the court observed:
 No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the nation's roads are legion. The anecdotal is confirmed by the statistical. `Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage.'
Michigan Department of State Police v. Sitz, ___ U.S. ___ 110, S.Ct. 2481, 2485-2486 (1990). See also, South Dakota v. Neville, 459 U.S. 553,103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983) ("The carnage caused by drunk drivers is well documented and needs no detailed recitation here)"; Breithaup v. Abram, 352 U.S. 432, 77 S.Ct. 408, 412 L.Ed.2d 448 (1957), ("The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield"); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 672, CT Page 1030628 L.Ed.2d 130 (1971) (Blackmun, J. concurring) (deploring "traffic irresponsibility and the frightful carnage it spews upon our highways"); Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 1715 and 1722,29 L.Ed.2d 233 (1971) (Blackmun, J. concurring) ("The slaughter on the highways of this nation exceeds the death toll of all our wars"); Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 2620-2621,61 L.Ed.2d 321
(1979) (recognizing the "compelling interest in highway safety" in upholding the constitutionality of Massachusetts' implied consent law's summary license suspension procedures).
As part of Connecticut's program to deter drunken driving, the general assembly has enacted an implied consent law. See Conn. Gen. Stat. 14-227b, as amended by Public Act No. 89-314. This statute declares that any person who operates a Motor Vehicle in Connecticut shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine if arrested or driving while under the influence of intoxicating liquor or any drug, or for other enumerated offenses. Id. If the person arrested refuses to submit to the test or analysis mandated by the implied consent law, that person's operator's license shall be suspended for a period of six (6) months. Id. Prior to the effective date of the suspension, however, the person is entitled to an administrative hearing. Without question, the public interest in this case is on the side of public and not the plaintiff.
There clearly is no overriding penal or civil issue in this case which demands attention. As to whether the plaintiff could be similarity affected in the future, that issue is squarely in his hands. All he has to do is not drink and drive. No more, no less is being asked of Mr. Newell than any other citizen.
For the reasons stated, the appeal is dismissed as moot.
PICKETT, JUDGE