## WILLIAM J. GIFFORD ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.[*]

SUPERIOR COURT        JUDICIAL DISTRICT OF        FILE NO. 385103S
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed May 4, 1992

[*] This case is presently on appeal to the Appellate Court Docket Nos. AC 11446, 11447. The appeals were filed June 8, 1992.

*David J. Wenc,* for the named plaintiff.

*Mary H. Lesser,* assistant state's attorney, for the plaintiff Richard N. Palmer.

*Constance L. Chambers,* for the named defendant.

*Phelon, Squatrito, Fitzgerald, Dyer & Wood,* for the defendant Journal Inquirer.

*Robert H. Boone,* pro se, the defendant.

SPADA, J. The issue of first impression raised by this appeal is whether a police arrest/incident report is accessible during the pendency of a criminal prosecution. This court concludes that no right of access exists.

The plaintiffs are William J. Gifford, chief of police of the town of Windsor Locks, and Richard N. Palmer, chief state's attorney. Palmer was substituted as a plaintiff in place of John J. Kelly, formerly chief state's attorney. Palmer was found to be aggrieved and accordingly made a party to these proceedings. See *Kelly* v. *Freedom of Information Commission,* 221 Conn. 300, 603 A.2d 1131 (1992).

The defendants are the freedom of information commission (commission), a state agency, the Journal Inquirer, a newspaper with its primary circulation in eastern Connecticut, and Robert H. Boone, a Journal Inquirer news editor.

On September 12, 1989, the Windsor Locks police arrested two individuals who were distributing racist and anti-Semitic literature in front of a convenience store. One of the accused, a youth, was charged with possession of a dangerous weapon. The other, an adult, was charged with reckless endangerment.

On September 13, 1989, a Journal Inquirer reporter requested a copy of the police arrest report pertaining to these arrests. The police, on advice from the state's attorney's office, denied the reporter's request. The reason for the denial was pendency of the criminal prosecution. Boone thereafter filed a complaint with the commission charging the plaintiffs with a violation of General Statutes §§ 1-15 and 1-19 (a).

The plaintiffs claim that the arrest/incident reports are exempt under General Statutes §§ 1-19 (b) (3) (B), 1-19b (b), 1-20b, 1-19 (b) (4), 1-19c and article twenty-third of the amendments to the Connecticut constitution. The complaint was heard on March 1, 1990. The plaintiffs' grounds for nondisclosure were: (1) to protect witnesses; (2) to protect juveniles and youthful offenders; (3) to facilitate additional investigations that may be initiated by the prosecutor's office; (4) to minimize unfavorable publicity to avoid a change of venue; (5) to preclude any prejudice caused by publication of a defendant's confession or admission; (6) to avoid publication of inadmissible evidence; and (7) conflicts with the rules of discovery of General Statutes § 54-86b and Practice Book §§ 746, 752 and 753.

On May 23, 1990, the commission adopted its hearing officer's report as its final decision. At a subsequent hearing held on July 30, 1990, where Kelly was accorded intervenor status, the issues were relitigated. Although the criminal prosecution was completed and the arrest/incident report released prior to the commission's final decision, the commission, on September 19, 1990, nevertheless determined that during the pendency of a criminal prosecution, police arrest/incident reports were accessible to the public under the Freedom of Information Act, General Statutes §§ 1-15 and 1-19 (a). The commission determined that, except for the names and addresses of witnesses, police arrest/incident reports were not exempt from disclo-

sure and ordered the police chief "to comply with the disclosure requirements of § 1-19 (a)" and "cautioned the plaintiff to take care to comply with the law in the future or it may risk further consequences for its continuing disregard of the law."

The plaintiffs filed separate appeals. The issues were vigorously argued on February 10, 1992, and days subsequent. Subsumed in the dispositive issue are several subordinate issues, that need to be addressed.

The contention of the chief state's attorney and the division of criminal justice that its jurisdiction attaches upon an arrest is manifestly sound. "There shall be established . . . a division of criminal justice which shall be in charge of the investigation and prosecution of all criminal matters." Conn. Const., art. IV, as amended by amend. XXIII. The division of criminal justice, whose administrative head is the chief state's attorney; id.; is constitutionally charged, upon every arrest, with the responsibility to investigate and prosecute the arrested person. A linchpin of this charge in cases of warrantless arrests is the police arrest/incident report.

In matters of warrentless arrests, the police report is the incipient and most critical stage of the prosecution. The report determines whether a prosecutor (1) orders an additional investigation, (2) terminates a prosecution, (3) adds, reduces or substitutes criminal charges, (4) transfers the prosecution to a higher division, or (5) argues to lower or raise the bail bond, where applicable. The constitutional empowerment is replicated in General Statutes § 51-276: "There is hereby established the division of criminal justice . . . which shall be in charge of the investigation and prosecution of all criminal matters in the superior court."

The raison d'etre of the police report is to prepare a record for action by the prosecutor. Records of the prosecutor are exempt from the Freedom of Informa-

tion Act. "For the purposes of subsection (a) of section 1-18a, the division of criminal justice shall not be deemed to be a public agency except in respect to its administrative functions." General Statutes § 1-19c.

To conclude that the police report is not a prosecutorial record or is otherwise accessible is a conclusion repugnant to the constitutional and statutory mandates accorded to the division of criminal justice. Such a conclusion severely vitiates the lodestone of the prosecutor's arsenal against crime.

It is a distraction to contend that police departments are public agencies and are not agents of the division of criminal justice. To argue as the defendants do that the police must be declared agents of the division of criminal justice in order to trigger § 1-19c is a non sequitur. The preparation of the police report is solely a police responsibility. Once it is concluded and an arrest has been made, the jurisdiction of the division of criminal justice immediately attaches and the police report becomes the first record of the division in its prosecution of that particular case.

It is beyond dispute that the state's attorney and prosecutors control, direct and investigate criminal prosecutions. Where requested, the police are statutorily required to assist and cooperate with the division of criminal justice in discharging the obligations of the prosecution. General Statutes § 51-286 (d) and (e). At the behest of prosecutors, the police undertake additional investigations, retain custody of the evidence, and testify as state's witnesses. In cases of warrantless arrests, the police arrest/incident reports are the incubation of the subsequent prosecutorial process. To order, as does the commission, that these reports become immediately accessible to the public would constitute a fatal compromise to the effective prosecution of crime.

The commission's position that each arrest report could be individually adjudicated to determine whether prejudice would ensue; see General Statutes § 1-19 (b) (3) (B); ignores reality and guarantees gridlock to effective prosecution. "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (3) records of law enforcement agencies *not otherwise available to the public* which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known, (B) information to be used in a prospective law enforcement action if prejudicial to such action . . . ." (Emphasis added.) General Statutes § 1-19 (b) (3) (A) and (B).

According to the 1990 annual report of the state department of public safety—uniform crime reports—there were 218,115 arrests in Connecticut in 1990. If it is assumed that the prosecution would raise the issue of prejudice in each case of warrantless arrests, the sheer volume of required hearings would render impotent two strategic public agencies of this state. A careful reading of § 1-19 (b) (3) (A) and (B) leads to a conclusion that arrest/incident reports do not fall within its purview, that the statute's prejudicial balancing test speaks to an ongoing prearrest investigation, and that arrest/incident reports are "not otherwise available to the public."

General Statutes § 1-20b provides in relevant part: "[A]ny record of the arrest of any person, other than a juvenile, except a record erased pursuant to chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-15 and subsection (a) of section 1-19. For purposes of this section, 'record of the arrest'

means the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested."

Section 1-20b, is unambiguously referenced to police arrest/incident reports. In order for § 1-20b and § 1-19 (b) (3) (B) to be read in harmony, it is essential that arrest/incident reports not be included within the latter's ambit. " 'It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling.' " *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110, 214 A.2d 354 (1965). Accordingly, the only information that is disclosable from a police arrest/incident report is as specifically provided under § 1-20b. The division of criminal justice has never objected to the disclosure of this information.

There are sufficient policy reasons to protect against the improper disclosure of arrest/incident reports; for example, the legitimate concern for witness intimidation, the risk of unfavorable publicity, the handicapping of further investigations and the disclosure of otherwise inadmissible trial evidence.

Rules 3.6 and 3.8 of the Rules of Professional Conduct circumscribe what a prosecutor may disclose in a criminal case. The limits of rule 3.6 (c) (7) coincide with the statutory limits of § 1-20b. Additionally, under rule 3.8 (e), prosecutors are required to prevent police personnel from disclosing "extrajudicial statement(s) that the prosecutor would be prohibited from making under Rule 3.6." Rules of Professional Conduct 3.8 (e). In the commentaries to these rules, it is clear that a prosecutor exposes his office to grievance complaints if he permits the unabridged disclosure of police arrest reports.

An additionally subsumed issue is whether the commission's order in the present case supersedes the statutory and Practice Book rules of discovery. "Nothing in section 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be deemed in any manner to . . . affect the rights of litigants . . . under the laws of discovery of this state . . . ." General Statutes § 1-19b (b). Notwithstanding § 1-19b (b), the commission's actions do affect the statutory and Practice Book rules of discovery enjoyed by the parties to an arrest. Both the state of Connecticut and the defendant are present parties to the criminal prosecution once an arrest attaches. Their rights are particularized in General Statutes §§ 54-86a, 54-86b, 54-86c and 54-86d.

Under these statutes, a defendant's written or recorded confession or admission is disclosable "after the filing of the . . . information, and upon a showing that the items sought may be material to the preparation of his defense . . . ." General Statutes § 54-86a. The release of arrest/incident reports as ordered by the commission would preempt a required judicial order and ignore the time period for seeking such an order. Clearly the rights of both parties would be adversely affected by the premature release of police arrest reports.

Section 54-86b (the *Jencks* rule) permits examination of a witness' statement by the defendant after the witness has completed direct examination. Patently, the commission's current order to release police arrest reports would render nugatory the *Jencks* rule. Witness' statements would be disclosed months and years before their trial testimony occurred.

Section 54-86c permits the state thirty days after a not guilty plea to disclose exculpatory information to a defendant. Once again, the early release of a police

arrest report places in jeopardy the discovery procedural rights accorded to the parties in a criminal prosecution.

Sections 54-86d and 54-86e ensure the confidentiality of sexual assault victims. Clearly, the premature release of arrest/incident reports could seriously compromise the policy purposes of §§ 54-86d and 54-86e. In most instances, these reports prepared by police personnel for examination by a trial judge and prosecutors are not redacted at this stage. To suggest that these reports could be released after a redaction would surely invite countless administrative hearings and provide little guarantee that the policy purposes of § 54-86d could be met.

These statutory rules of discovery are tracked in §§ 752, 753 and 746 of the Practice Book and are equally subject to invasion and compromise with the premature release of a police arrest report. The commission's present order is in conflict with the rules of discovery. Where the conflict implicates a defendant's right of due process, and prejudices the constitutional and statutory obligation of the division of criminal justice to prosecute, then the right to access, if any, under General Statutes § 1-19a must yield. It would indeed constitute a legal incongruity to deny a defendant access to records or evidence without prior approval of a court order and yet make them accessible to any member of the public who asks.

There is little case law shedding light on the tension between § 1-19b (b) and § 1-19 (a). In *Sobocinski* v. *Freedom of Information Commission,* 213 Conn. 126, 566 A.2d 703 (1989), dismissed for mootness because the plaintiff had withdrawn her underlying complaint, the Supreme Court, although properly declining to resolve the question, had before it a plaintiff's request under § 1-19a to secure documents referred to in a

pending litigation against the department of transportation. The opinion highlighted the commission's dismissal of the plaintiff's complaint and its conclusion "that he (the commissioner) was exempted from disclosing the requested documents under § 1-19b (b) since the production of the records requested would affect the rights of litigants under the laws of discovery of this state." Id., 130–31.

The plaintiffs further rely upon General Statutes § 1-19 (b) (4): "[R]ecords pertaining to strategy and negotiations with respect to pending claims and litigation to which the public agency is a party until such litigation or claim has been finally adjudicated or otherwise settled." The state is the complaining party in every criminal case. The state's attorney is the state's representative in these cases. The arrest report is concededly the record used for strategy and negotiation in the majority of countless arrests. The underlying criminal case was disposed of two and one-half months after the request for access by the Journal Inquirer. This court concludes that arrest/incident reports fall within the ambit of § 1-19 (b) (4).

The plaintiff chief state's attorney submits a clarion constitutional argument in support of his position. It is not essential to the disposition of the present case that this court address the separation of powers issue he has raised. The appeal is resolved on statutory grounds and common law precepts.

The court concludes: (1) that the division of criminal justice is not a public agency in the investigation and prosecution of a criminal case; General Statutes § 1-19c; (2) that the jurisdiction of the division of criminal justice attaches upon the instance of an arrest; (3) that although the compilation of the police arrest/incident report rests with the arresting personnel, the report upon its completion is a record of the division

of criminal justice; (4) that a disclosure of the arrest/ incident report during the pendency of a criminal prosecution, without permission of the division of criminal justice, constitutes a violation of § 1-19b (b) and the specific statutory and Practice Book rules of discovery references herein above; (5) that the premature release of an arrest/incident report contravenes the right of the division of criminal justice as a party to negotiations under § 1-19 (b) (4); and (6) that law enforcement records as contemplated in § 1-19 (b) (3) (A) and (B) pertain to ongoing investigations and contemplated or prospective law enforcement proceedings, i.e., arrests to be made at a later date. The referenced proviso does not include compiled arrest/incident reports.

This court finds further that the plaintiffs have a specific and personal interest in the validity of the commission's decision and are accordingly aggrieved by its order.

This appeal was taken pursuant to General Statutes §§ 1-21i (d) and 4-183. The commission in its decision of September 1, 1990, made certain findings and orders that this court concludes are in violation of statutory provisions, in excess of the agency's authority, clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and a clearly unwarranted exercise of discretion.

Certain of the commission's findings best highlight the miasma the division of criminal justice seeks to avoid. Before trial, the commission's orders in the present case would have permitted the disclosure of the various narratives of the incident leading to the arrest, a description of the adult accused's behavior in jail, full statements of the witnesses, the name and address of the victim and the name and address of an accused youthful offender.

For the reasons cited above, judgment is entered sustaining the appeal. The commission is ordered to rescind and vacate its orders mandating disclosure of police arrest/incident reports during the pendency of a criminal prosecution.