[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 23, 1997
This is an administrative appeal brought by the Department of Public Safety from an order of the respondent Freedom of Information Commission dated April 24, 1996. The dispute arises out of an unfortunate and well-publicized incident beginning on July 6, 1995. On that date, a member of the Nepalese Special Olympics team, Ramesh Mali, was reported missing and likely drowned at Hammonasset Beach State Park. Various local state and federal agencies conducted an extensive search for the body, which was found approximately four days later off Meigs Point. The Connecticut State Police generally and its Major Crimes Squad specifically coordinated much of the rescue and recovery effort.
The Hartford Courant and two of its reporters, T. Dennie Williams and Tracey Thomas, almost immediately requested access to the investigative reports and records which were being generated by the response to the situation. By letter dated July 12, 1995, the plaintiff indicated that the request for access was being reviewed; the defendants on July 18, 1995, requested relief from the defendant commission. On July 18, 1995, the plaintiff said that the request was being denied because the investigation was not complete. During the course of the next several months, the reporters renewed their request from time to time. Ultimately, all records involving the entire incident were made available to the reporters on approximately November 8, 1995.
Williams, Tracey and the Courant nonetheless persevered, and the FOIC held a hearing on January 24, 1996. At the hearing, testimony was presented by both reporters and an editor at theCourant, as well as by Lt. Timothy Barry of the State Police. Copies of the various requests for information were introduced, as well as a copy of the entire investigation. The court has CT Page 7515 reviewed the records submitted to the FOIC, and they may be very generally categorized as narrative incident reports compiled by various officers, statements of a variety of witnesses and copies of reports from other agencies. Almost all of the records, including the witness statements, were compiled in the first week of the investigation.
The plaintiff submitted the case to the New Haven State's Attorney's Office in August or September, 1995, but did not receive clearance to close the case from the State's Attorney until November, 1995. The State's Attorney found that there was no reason for a criminal prosecution. At that point, the plaintiff disclosed all the materials to the press, as noted above.
On this record, the defendant commission determined that the Department of Public Safety had violated §§ 1-15 and 1-19 (a) of the General Statutes. The Department had claimed exemption from disclosure pursuant to various portions of § 1-19 (b) (3) of the General Statutes; on appeal the Department of Public Safety specifically claims that the FOIC erred by not finding the records exempt pursuant to § 1-19 (b)(3)(B) and § 1-19
(b)(3)(C).[1] The FOIC ordered no immediate relief, as, of course, the records had already been disclosed prior to the hearing. It nonetheless found that because no evidence had been presented to the effect that there was ever a suspect and because the nature of the investigation was never more than potentially criminal, the Department had unlawfully withheld all records other than witness statements from the time the records were compiled, as, according to the FOIC, the records did not fit any exemption. Noting that some of the reports dated on or after August 16 had been coded "no criminal aspect", the FOIC held that the witness statements should have been disclosed as of that date. No penalty was assessed, but it was ordered that in the future the Department of Public Safety "shall strictly comply with the requirements of §§ 1-15 and 1-19 (a)" of the General Statutes.
There does not appear to be any significant dispute as to the facts. Although the issue is ultimately one of statutory construction and application, the practical difference between the parties, expressed both in the briefs and at oral argument, is fairly simple: the Department seems to believe that it is obligated to disclose records involving potentially criminal matters only after the State's Attorney has confirmed that there CT Page 7516 is no criminal investigation worth pursuing, while the FOIC seems to believe that at least until there is some objective reason to be]ieve that a crime has occurred, full disclosure must be made.The Courant did not submit a brief, but suggested at oral argument that the case ought to be decided solely on the record of this case rather than on consideration of broader generalizations of potential difficulties. There is, of course, some merit to this suggestion.
As a preliminary matter, it is found that the issue as presented is justiciable, even though full disclosure of the requested records was made prior to the hearing before the FOIC. A virtually identical situation was presented in Gifford v.Freedom of Information Commission, 227 Conn. 641 (1993). Our Supreme Court held that the appeal was not moot, because the order which the commission ordered in that case, like the one in the case at hand, was prospective and affected disclosure obligations. Id. at 649, n. 9. Neither party has suggested that the matter is moot.
Similarly, there is no dispute as to the standard for review. Section 4-183j of the General Statutes provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The court should reverse the orders of the commission, if at all, only on the grounds enumerated in § 4-183j of the General Statutes. The Department appears to argue that the ruling was clearly erroneous in light of all the evidence; see § 4-183j(5); and additionally that the holding concerning the date by which the witness statements should have been disclosed was arbitrary and capricious. See § 4-183j(6).
The court is limited to the determination of whether the commission acted lawfully, not whether the court would have reached the same result. See Hospital of St. Raphael v.Commission on Hospitals and Health Care, 182 Conn. 314, 318
(1980). An agency's interpretation of the regulatory statutes to be enforced by the agency is to be accorded some deference. See, e.g., Perkins v. FOIC, 228 Conn. 158, 165 (1993). Conclusions of law must stand if they result from a correct application of the law to the facts found. New Haven v. FOIC, 205 Conn. 767, 774
(1988). Where, as here, the issue is whether an exemption to the duty to disclose has been proved, the burden of proof is on the party claiming the exemption, as the general policy of the Freedom of Information Act favors disclosure. Chairman v. FOIC,
CT Page 7517217 Conn. 193, 196 (1991). Although most disclosure issues do not directly implicate the First Amendment, there are First Amendment undertones. See Chairman v. FOIC, supra; State v. Januszewski182 Conn. 142, 171 (1980). If, of course, the court finds that the agency acted in violation of constitutional or statutory provisions or made an error of law, it is bound to reverse the action of the agency. See § 4-183j of the General Statutes.
In one sense, the resolution of the appeal depends on the issue of whether the Department of Public Safety sustained its burden of proof that the records were exempted from disclosure.[2]
The agency and The Courant claim, quite simply, that at the hearing the Department did not offer evidence to show that the records in question were compiled "in connection with the detection or investigation of crime", and thus none of the subsections of § 1-19 (b)(3) were proved. The Department, almost equally simply, suggests that the record is rife with testimony by Lt. Barry to the effect that the police do not necessarily know where an investigation will lead, and before it is deemed to be "closed" for purposes of criminal investigation, the state's attorney's office must review the investigation and determine that there is no criminal aspect. See, e.g., pp. 31-37 of the record. Both sides are correct from their respective points of view: there was little or no evidence presented either in the reports and statements ultimately produced or in the testimony of Lt. Barry that a crime was committed; on the other hand, the evidence presented to the FOIC inescapably leads to the conclusion that the investigation was conducted as if a crime may
have been committed and the materials were presented to the state's attorney's office for review. See, e.g., Record 31 et seq. Similarly, there is no dispute that, in denying the reporters' requests until November, the ground advanced by the Department was that the investigation was continuing. The Department did not expressly and specifically invoke one of the exemptions now relied upon.
Both sides urge that Gifford v. Freedom of InformationCommission, 227 Conn. 641 (1993) ("Gifford II") and Gifford v.Freedom of Information Commission, 42 Conn. Sup. 291 (1992) ("Gifford I"), are germane to the issues. The precise issue in the Gifford cases was whether police were required to disclose records in a case in which an arrest had been made and a prosecution was pending. The Freedom of Information Commission held that such records were public records and no exemption had been proved. In Gifford I, Judge Spada reversed the FOIC on a CT Page 7518 variety of grounds; our Supreme Court in Gifford II affirmed Judge Spada's reversal of the FOIC, but on a more narrow ground: it held that in the post-arrest context § 1-20b was the specifically applicable statutory provision, and that § 1-20b, by specifically requiring disclosure of very limited information, implicitly did not require disclosure of additional information. Although Judge Spada had mentioned in dictum that in the pre-arrest situation the balancing criteria of § 1-19
(b)(3) applied, the Supreme Court specifically stated that it was not addressing the pre-arrest situation. Gifford II, at 651. Although Gifford is not, then, specifically binding authority with respect to the instant case, a number of the considerations raised in the Gifford cases are apropos.
Perhaps most critical to the resolution of this appeal, the Supreme Court in Gifford II indicated that the decision as to whether the statutory scheme required disclosure of reports in the context of that case was a question of law and thus one for determination by the court; the agency decision on a question of law is by no means binding. Gifford II, 652. The court then employed familiar principles of statutory construction, including consideration of discovery rights in the criminal process. If the FOIC's decision were upheld in that case, the public would have almost unlimited discovery rights in criminal cases, far greater than those granted to defendants themselves under statutes and rules governing criminal discovery. Similarly, the defendant, as a member of the public, would have access to documents on which "the prosecutor relies to make strategic decisions regarding the prosecution and to decide whether to request further investigation by the police." Id. at 665. In limiting § 1-20b to disclosure only of very limited facts, the Supreme Court suggested that the General Assembly never intended the Freedom of Information Commission to be "the overseer of criminal discovery rules." Id. at 665-66.
As noted above, Judge Spada had ruled more expansively. He held that partly because the state's attorneys were charged by the Connecticut Constitution with direction of the investigation and prosecution of crime, the division of criminal justice appropriately had an interest in the controversy and that a completed arrest report is a record of the division of criminal justice. He held that disclosure of reports during the pendency of a prosecution violated numerous discovery provisions. He stated that an individual evaluation of each arrest report to determine whether prejudice would ensue if the record were CT Page 7519 disclosed was an impractical solution. Gifford I, supra, at 296. Judge Spada also noted that blanket disclosure would compromise the rights of accuseds, as the Rules of Professional Conduct and cases regarding pretrial publicity have established specific and severe limitations on what may be disclosed in order to preserve the right to a fair trial untainted by prejudicial publicity: it is well established that a prosecutor may not disclose police reports prior to trial. Id. at 297. Similarly, blanket disclosure of police reports prior to trial obviously creates an end run around well established discovery rules. Id., 297-99.
The Supreme Court in Gifford II stated, as noted above, that statutory interpretation presents a question of law. Gifford v.FOIC, supra, at 652. "The objective of statutory construction is to give effect to the intended purpose of the legislature. Statev. Delafose, 185 Conn. 517, 521 (1981). . . ." Id. A statute is to be read "with common sense so as to accomplish a reasonable result". Doe v. Statewide Grievance Committee, 240 Conn. 671, 683
(1997). In order to determine meaning, a court looks "to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship toexisting legislation and common law principles governing the samegeneral subject matter." Cislo v. Shelton, 240 Conn. 590, 597
(1997) (emphasis added).
Applying these principles to the case at hand, I find that the construction of § 1-19 (b)(3) as urged by the FOIC would lead to bizarre results inconsistent with existing law. AlthoughGifford II does not apply precisely, the references in it and inGifford I to the established rules of discovery and rights of the criminal defendant to a fair trial are equally apropos to the pre-arrest scenario. The premature disclosure of an ongoing investigation is as damaging before an arrest as after an arrest, even if it is not immediately known if the investigation is "criminal"; and disclosure could surely compromise the rights of litigants. See § 1-19b (b) of the General Statutes. In order to reconcile § 1-19 (b)(3) with other statutes, Practice Book rules and judicial decisions, the term "detection or investigation of crime" must be read somewhat more broadly than the FOIC urges, and must include the investigation as to whether a crime occurred in a particular situation in addition to the investigation of a known crime. Indeed, the phrase "detection . . . of crime" may be meaningless if the exemption were intended to apply only to the investigation of known crimes. CT Page 7520 As the Division of Criminal Justice has the constitutional duty to investigate and prosecute all crimes; see Article XXIII of the Connecticut Constitution; I also find that the practice of waiting until a prosecutor has signed off on an investigation to be appropriate in many situations. See Gifford I at 294 et seq.
A second issue is whether the language used by the Department of Public Safety in denying the request was sufficient to merit consideration of the statutory exemption. In its letter to the complainants dated July 19, 1995, the Department stated that the requested records "are not available at this time because the investigation is not completed. . . . [A]s soon as the investigation is completed a copy will be forwarded to you." R. 53. Although it is not entirely clear from this language that the Department had foreclosed any possibility of a potential prosecution, it certainly seems to assume that it had: otherwise, one would think that the promise to disclose the entire investigation would be somewhat less unequivocal. Thus, the position of the Department was somewhat elusive, in that it did not purport to rely on any exemption from disclosure, while at the same time it was not disclosing. Meanwhile, to complicate the logical morass, it may well actually have had sufficient grounds not to disclose, at least until a prosecuting authority had reviewed the material.
To avoid the ambiguity, the Department may well have indicated to the complainants that the investigation possibly may have involved the detection or investigation of crime, and that disclosure would be delayed until a determination might be made. Indeed, the FOIC found that the Department actually treated the matter initially as potentially criminal. R. 257, ¶ 16.
Fashioning relief in the peculiar circumstances of this case is somewhat nettlesome, as the practical act of complying with the law has already been performed, and, as no penalty was imposed, the only order of the FOIC was to comply with the law. R. 258; ¶ 1. As a general proposition, it is difficult to quibble with that order. The court would be venturing on the dangerous ground of rendering advisory opinions were it to comment on the legality of a hypothetical action. As the courts ruled in the analogous Gifford cases, however, I will make the following conclusions:
A. The commission's finding that the Department initially treated the matter as a potentially criminal investigation is CT Page 7521 inconsistent with its finding that disclosure was not exempted, at least temporarily, pursuant to § 1-19 (b)(3)(C) of the General Statutes. See Gifford I, supra.
B. The issue whether the date which was suggested by the FOIC for the disclosure of witness statements was arbitrary is moot, in view of the finding as to the records in general.
C. In the future, the Department is advised to state whether a matter is potentially criminal, in order to avoid the ambiguities present in this case.
D. In the circumstances of this case, there is no compelling reason to do anything other than affirm the order of the FOIC, which, read narrowly, is simply to follow the law. I do find, however, that the law does not require disclosure of records of investigations where it is not yet known if a crime has been committed or whether a prosecution will ensue, so long as there is a good faith basis for the assertion.
BEACH, J.