### IN RE ROMANCE M.*
### (14804)
### (14878)

PETERS, C. J., BORDEN, BERDON, KATZ and PALMER, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

Argued March 29—decision released April 19, 1994*

* April 19, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Benjamin Zivyon,* assistant attorney general, with whom were *Dennis Antonacci,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellant in the first case, appellee in the second case (petitioner commissioner of children and youth services).

*Kathleen M. Harkins,* with whom, on the brief, was *Ronald E. Sobieraj,* for the appellee in the first case, and *Valerie Alexander,* with whom was *William R. Kinloch,* for the appellant in the second case (respondent mother).

*Barbara J. Claire* filed an appearance for the minor child.

PETERS, C. J. The principal issue underlying these two appeals is the propriety of terminating the parental rights of a mother who has been unsuccessful in coping with problems arising out of her personality disorder and her substance abuse. The appeals arise out of successive petitions brought by the petitioner, the commissioner of the department of children and youth services (commissioner), to terminate the parental rights of the respondent, Gail M. (mother), with respect to her young son, Romance M.[1]

Romance was born on November 11, 1988, and was placed in foster care the following month. On January 5, 1989, the commissioner filed coterminous petitions, pursuant to General Statutes (Rev. to 1993) § 17a-112 (e),[2] for commitment of Romance to the

---

[1] The mother does not challenge the contemporaneous termination of her parental rights with respect to some of her other children.

[2] General Statutes (Rev. to 1993) § 17a-112, formerly § 17-43a, provides in relevant part: "TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. . . .

"(e) Any petition brought by the commissioner of children and youth services to the superior court, pursuant to subsection (a) of section 46b-129,

department of children and youth services and for termination of the mother's parental rights. The ground alleged in the termination petition was that "the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being." General Statutes § 17a-112 (b) (3).

The termination petition noted that the reason alleged for termination had existed for less than one year; see General Statutes § 17a-112 (b);[3] but asked the court to waive the one year requirement in the best interest of the child. More than one year later, during the hearing on the coterminous petitions, the commissioner obtained the permission of the trial court to file an amended petition that alleged additional facts in support of the termination petition. The trial court, *Axelrod, J.*, granted the commitment petition but refused to waive the one year provision and therefore denied the termination petition. On appeal, the Appellate

may be accompanied by a petition for termination of parental rights filed in accordance with this section with respect to such child, notwithstanding that such child has not been committed to the commissioner of children and youth services. Notice of the hearing on such petitions shall be given in accordance with sections 45a-716 and 45a-717. The superior court, after hearing, in accordance with the provisions of subsection (b) of this section, may, in lieu of granting the petition filed pursuant to section 46b-129, grant the petition for termination of parental rights as provided in section 45a-717."

[3] General Statutes § 17a-112, formerly § 17-43a, provides in relevant part: "TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. . . .

"(b) The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year . . . ."

Court affirmed the judgment of the trial court. *In re Romance M.,* 30 Conn. App. 839, 860, 622 A.2d 1047 (1993). We granted the commissioner's petition for certification to appeal from the judgment of the Appellate Court with respect to the applicability of the one year requirement in light of the date of the amended petition. This is Supreme Court Docket No. 14804.

During the pendency of the appeal to the Appellate Court, the commissioner filed a second petition[4] to terminate the mother's parental rights. This petition was grounded on the mother's failure to rehabilitate herself subsequent to the finding of neglect. General Statutes (Rev. to 1993) § 17a-112 (b) (2).[5] The trial court, *Silbert, J.,* rendered a judgment granting the petition.[6] The mother appealed from the judgment of the trial court to the Appellate Court, and we transferred the

---

[4] The second petition was dated February 13, 1992, and was amended effective May 29, 1992.

[5] General Statutes (Rev. to 1993) § 17a-112, formerly § 17-43a, provides in relevant part: "TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. . . .

"(b) The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year . . . (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child . . . ."

[6] Counsel for the commissioner advised this court at oral argument that the commissioner was relying only on the allegation that the mother had failed to rehabilitate herself. An alternate allegation, that Romance "has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being"; General Statutes § 17a-112 (b) (3); has been withdrawn.

appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). This is Supreme Court Docket No. 14878.

Because the mother's appeal directly challenges a fact finder's determination that her parental rights should be terminated, the cause of justice will be served by resolving first the merits of her appeal. We conclude that the judgment in Docket No. 14878 must be affirmed. That affirmance leads us to dismiss the petition for certification in Docket No. 14804 as having been improvidently granted.

## THE DIRECT APPEAL

In her appeal from the judgment rendered by Judge Silbert terminating her parental rights with respect to Romance, the mother has raised three issues. She maintains that the judgment terminating her parental rights should be set aside because the trial court improperly: (1) waived the one year requirement of § 17a-112 (b); (2) found that she had failed to rehabilitate herself as rehabilitation is defined by § 17a-112 (b) (2); and (3) found that termination was in the best interest of the child. General Statutes § 17a-112 (d). We are unpersuaded.

1

The mother claims first that the petition to terminate on the ground of § 17a-112 (b) (2) was premature because the petition was filed less than one year after the adjudication of Romance as a neglected and uncared for child. Although § 17a-112 (c)[7] authorizes the trial

---

[7] General Statutes (Rev. to 1993) § 17a-112, formerly § 17-43a, provides in relevant part: "TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. . . .

"(c) The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

court to waive this one year period, the mother claims that such a waiver was improper in her case.

The procedural history of this petition to terminate is as follows. In an order dated July 15, 1991, the trial court, *Axelrod, J.,* found that Romance was a neglected and uncared for child, and accordingly committed him to the custody and guardianship of the commissioner. The mother's appeal to the Appellate Court did not challenge the validity of this order. *In re Romance M.,* supra, 30 Conn. App. 839. On September 10, 1991, the trial court, *Teller, J.,* granted the commissioner's motion to set expectations for the mother's conduct to rehabilitate herself. Concluding that the mother had not met these expectations, the commissioner filed a petition to terminate the mother's rights on February 18, 1992. The petition was subsequently amended on May 29, 1992.

Section 17a-112 (b) (2) requires the commissioner to prove that a parent "of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding ha[s] failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, [she] could assume a responsible position in the life of the child." The mother maintains that the commissioner cannot establish this ground for termination without also complying with the requirement, stated in the preamble to § 17a-112 (b), that any ground for termination shall have existed "over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year . . . ." From this premise, the mother argues that the trial court could not have granted the petition without waiving the one year requirement. The mother urges us to conclude that the trial court lacked an evidentiary foundation for its implied determination that such a waiver was appropriate.

This issue was not presented to the trial court. In the termination petition, the commissioner alleged that the reasons for termination had existed for "not less than one year." Although represented by counsel, the mother did not contest this allegation. The mother's defense against the termination petition challenged the underlying facts adduced by the commissioner but raised no question, either during the proceedings or in posttrial briefs, about the applicability of the one year rule to this case. Accordingly, the trial court, in its memorandum of decision, did not address the propriety of a waiver under § 17a-112 (c).[8] The mother filed no motion for articulation in the trial court to rectify this omission. See Practice Book § 4051; *Matza* v. *Matza,* 226 Conn. 166, 187–88, 627 A.2d 414 (1993); *Walton* v. *New Hartford,* 223 Conn. 155, 164–65, 612 A.2d 1153 (1992).

Under Practice Book § 4185, this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." We recognize that a mother has a fundamental constitutional right to retain her relationship with her child and that this right can only be severed in strict compliance with applicable statutory standards. *In re Baby Girl B.,* 224 Conn. 263, 279–81, 618 A.2d 1 (1992); *In re Jessica M.,* 217 Conn. 459, 464–66, 586 A.2d 597 (1991). Nonetheless, we have regularly observed that the rule of § 4185 "applies to constitutional claims. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between

[8] Significantly, the trial court expressly noted that it might have to consider a waiver of the one year rule with respect to another child, Allan D., Jr., for whom the commissioner was simultaneously seeking an adjudication of neglect and a termination of parental rights.

the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties." (Citations omitted; internal quotation marks omitted.) *Berry* v. *Loiseau,* 223 Conn. 786, 828–29, 614 A.2d 414 (1992). The mother has pointed us to no such exceptional circumstances in the present case. Accordingly, we decline to review the merits of this claim.

2

The mother's second claim on appeal is that the trial court improperly found that she had failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable period of time, she could assume a responsible position with respect to the care of Romance. General Statutes § 17a-112 (b) (2). Without citing any particular evidence in the record, the mother maintains that, by the time of trial, she had made considerable progress in rehabilitating herself.[9] In essence, this claim is a challenge to the sufficiency of the evidence at trial to support the trial court's adjudicatory determination that the commissioner had proved, by clear and convincing evidence, this ground for termination of the mother's parental rights. We disagree with the mother's claim.

On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. *In re Luis C.,* 210 Conn. 157, 166, 554 A.2d 722 (1989). The trial court's memorandum of decision cites ample evidence to support its determination

[9] The mother presented no evidence at trial.

in this case. The evidence at trial demonstrated that, despite her periodic participation in a variety of treatment programs, the mother suffers from a personality disorder and from chronic substance abuse. A court-appointed psychiatrist "favor[ed] termination of [the] mother's parental rights . . . because of her excessive drinking, personality disorder and utter failure to recognize the consequences of her actions and to learn from them." A court-appointed clinical psychologist, having made a similar diagnosis, was of the opinion that the mother's past behavior indicated "a lack of likelihood of her ability to rehabilitate herself." Direct observers of the mother's interaction with Romance testified that her behavior was frequently inappropriate and inconsistent. This record contains substantial evidence of the mother's failure to achieve a degree of rehabilitation that would reasonably encourage the belief that, within a reasonable period of time, she could assume a responsible position with respect to the care of Romance. We therefore reject the claim that the termination of her parental rights was improperly adjudicated.

3

After an adjudicatory determination that a ground for the termination of parental rights has been established, § 17a-112 (d)[10] requires the trial court to make

[10] General Statutes (Rev. to 1993) § 17a-112, formerly § 17-43a, provides in relevant part: "TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. . . .

"(d) Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian

dispositional findings on each of six enumerated criteria to assure that termination is in the best interest of the child. In this case, the trial court found that each of these criteria had been factually established by clear and convincing evidence and therefore ordered the termination of the mother's parental rights. The mother's third claim on appeal challenges the validity of the trial court's factual findings in the dispositive phase of the proceedings against her. Applying the standard of review noted earlier in this opinion; see supra; we agree with the commissioner that she adduced sufficient evidence to sustain these findings.

The overarching concern raised by the mother's appeal on this issue transcends her disagreement with the specific factual findings of the trial court. The essence of her appeal is that the trial court, having found that she suffered from a personality disorder and from chronic substance abuse, took insufficient account of the fact that few persons recover from substance abuse without relapses. See *In re Valerie D.*, 223 Conn. 492, 511–12, 613 A.2d 748 (1992). She emphasizes that she has continued to seek treatment and to maintain contact with Romance, and that there is some evidence that her substance abuse has decreased. In her view, the department of children and youth services provided

of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

inadequate services to facilitate her reunification with Romance. She maintains that she has achieved as much of an ongoing parent-child relationship as is feasible with a young child who has continuously been in foster care. In light of all the circumstances, therefore, she claims that her parental rights should not be terminated. For two reasons, we are not persuaded.

As a matter of fact, the evidence before the trial court supported its findings that the mother had been unable to bring her substance abuse under control and that there were no reasonable prospects that she would be able to do so in the near future. The court found that the mother had received appropriate assistance from the department of children and youth services and that, contrary to her assertions, she had ignored numerous counseling and treatment referrals. The court found that Romance's foster mother has become Romance's psychological parent, and that Romance relates to his biological mother only as " 'a person who visits.' " Finally, the court relied on the testimony of expert witnesses who stressed the importance of a permanent placement for Romance's future health and development. These findings are all amply supported by the evidence of record. See *In re Luis C.*, supra, 210 Conn. 166.

As a matter of law, it is important to remember that the trial court's dispositional findings pursuant to § 17a-112 (d) followed its conclusion that the commissioner had established a ground of termination under § 17a-112 (b). As we observed in *In re Barbara J.*, 215 Conn. 31, 47, 574 A.2d 203 (1990), the issues involved in a dispositional hearing to determine compliance with the criteria enumerated in § 17a-112 (d) come into play only after the completion of the adjudicatory phase of termination proceedings under § 17a-112 (b). At the dispositional hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of

the child. That shift in emphasis provides additional support for the trial court's conclusion that the termination of the mother's parental rights is warranted by Romance's urgent need for a permanent placement.

The trial court's memorandum of decision reflects a careful and extensive review of the evidence on which it relied in both the adjudicatory and the dispositional phases of the termination proceeding. On the mother's direct appeal, we conclude, therefore, that the evidence sufficed to support the trial court's determination that the mother's parental rights should be terminated.

The judgment in Supreme Court Docket No. 14878 is affirmed.

### THE CERTIFIED APPEAL

The certified appeal is an appeal by the commissioner from the judgment of the Appellate Court. The commissioner challenges the validity of the Appellate Court's determination that the trial court, *Axelrod, J.,* properly refused to waive the one year rule with respect to the commissioner's earlier petition to terminate the mother's parental rights. We granted certification to consider the effect of an amended termination petition on the applicability of the one year provision contained in § 17a-112 (b).[11]

When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. *Moshier* v. *Goodnow,* 217 Conn. 303, 306, 586 A.2d 557 (1991); *Sobocinski* v. *Freedom of Information Commission,* 213 Conn. 126,

---

[11] We granted certification to appeal limited to the following issue: "Under the circumstances of this case, did the Appellate Court improperly conclude that the amendment to the petition related back to the date of the filing of the petition, for purposes of determining whether General Statutes § 17a-112 (b) applied?" *In re Romance M.,* 226 Conn. 916, 916–17, 628 A.2d 988 (1993).

134–35, 566 A.2d 703 (1989). This is such a case. Any further adjudication of the relationship between the mother and Romance has been rendered moot by our resolution of the mother's direct appeal. The rights of any one parent with respect to any one child cannot be terminated more than once.

The commissioner urges us nonetheless to consider the merits of the certified appeal as raising an issue that is "capable of repetition, yet evading review." See *Moshier* v. *Goodnow,* supra, 217 Conn. 307. This exception to the mootness rule applies if the issue "(1) could affect an ongoing program of the state penal or civil system, (2) could affect the complaining party in the future, and (3) involves a matter of public importance." *Goodson* v. *State,* 228 Conn. 106, 115, 635 A.2d 285 (1993); *Sobocinski* v. *Freedom of Information Commission,* supra, 213 Conn. 135; *Delevieleuse* v. *Manson,* 184 Conn. 434, 437, 439 A.2d 1055 (1981). The availability of the exception depends upon all the relevant circumstances of each case.

After examining the record on appeal and after considering the briefs and the arguments of the parties, we conclude that the appeal in this case should be dismissed on the ground that certification was improvidently granted. Our certification was predicated upon the assumption that our decision would resolve a question of ongoing public importance about the events that are relevant to an adjudication of petitions for the termination of parental rights. If that assumption had continued validity, this appeal might well fall within the "capable of repetition, yet evading review" exception to the mootness rule. We are, however, persuaded that the promulgation of Practice Book § 1042.1, that became effective on October 1, 1993, firmly establishes the applicable policy. Section 1042.1 (4) expressly provides: "In the adjudicatory phase, the court is limited to events preceding the filing of the petition *or the latest*

*amendment. . . .*" (Emphasis added.) That amendment in effect answers the certified question. It would be inconsistent with this Practice Book provision to hold that the one year period under General Statutes § 17a-112 (b) ends with the filing of a petition rather than with the filing of the latest amendment to the petition.

In light of the mootness of the judgment with respect to the underlying termination petition and the promulgation of Practice Book § 1042.1 (4), we conclude that this appeal no longer affords us an appropriate opportunity to undertake any further consideration of the question that we certified. See *Booth* v. *Flanagan,* 220 Conn. 453, 454–55, 599 A.2d 380 (1991); *Lawler* v. *Lawler,* 212 Conn. 117, 119, 561 A.2d 128 (1989). The petition for certification must be dismissed as having been improvidently granted.

The appeal from the Appellate Court in Supreme Court Docket No. 14804 is dismissed.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

BERDON, J., concurring. I concur in the result.