## IN RE MICHAEL R.*

Superior Court
Juvenile Matters

Memorandum filed August 7, 1997

JONES, J. At the trial in this proceeding for the termination of parental rights, the commissioner of children and families (commissioner) notes that as a neglected child Michael, now twelve years of age, has been committed to her care and custody since March 25, 1988, and that she has placed him in the physical custody of his maternal great-grandmother, who remains his physical custodian. The commissioner alleges that Michael's father has abandoned him, and points out that Michael's mother passed away on April 5, 1988. The commissioner seeks to terminate the parental rights of Michael's father on the ground of abandonment and thereafter to arrange Michael's adoption by his maternal great-grandmother who has looked after and nurtured him and with whom he shares a significant emotional bond.

Michael's father opposes the termination of his parental rights. At the trial, he claimed that he has not abandoned his son, that he loves him, and that he has been prevented from having meaningful contact with him.

---

* Thus entitled in accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book (1998 Rev.) § 79-3.

To prevail on the petition to terminate the respondent's parental rights, the commissioner must prove one of several grounds by clear and convincing evidence. One of the grounds is abandonment, and it is this ground that the commissioner asserts is applicable here. By statute, the commissioner must show that "[t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ." General Statutes § 17a-112 (c) (2) (A).

At the trial, the respondent father testified that he has not abandoned Michael. The commissioner produced evidence supportive of abandonment. The court makes the following findings.

I

ADJUDICATORY FINDINGS

Michael was committed to the custody of the commissioner in March of 1988. At that time, he was three years old. The commissioner placed Michael in foster care with his maternal great-grandmother where he has remained until now. The respondent father had no contact with Michael or the foster family in 1988, 1989, 1990, 1991, 1992, 1994 or through November, 1995. Although the respondent father was incarcerated for periods of time between 1988 and 1995, he knew Michael's whereabouts at all material times, and he did not communicate with Michael by telephone or letters during those years. The respondent father did contact Michael once, however, in 1993 immediately after a fire damaged the foster parent's residence.

Since his birth, Michael has not received even one birthday card from his father. Since his birth, Michael has not received even one Christmas card from his

father. Over the years, the respondent father has not attended any of Michael's baseball games.

Although the respondent father testified that the foster mother was not open to visits at her house, the court finds that the foster mother promoted visitation away from her house, and that at all times material the respondent father—including the times of nonincarceration—knew where his son was, and that he could have made arrangements for visitation either through the department of children and families or through the foster mother.

The respondent father also testified that he was embarrassed by his drug problem and stayed away from his son so that his son would not see his condition. For whatever reason, regrettably, the respondent father has not conducted himself in a way that demonstrates true caring and nurturing of young Michael.

For the foregoing reasons, the court finds by clear and convincing evidence that the respondent father has abandoned young Michael in that he has not maintained a reasonable degree of interest, concern or responsibility for his welfare.

## II

### DISPOSITIONAL FINDINGS

Inasmuch as the court has decided that the respondent father has abandoned young Michael, the court must now turn its attention to the dispositional phase of this case. In considering the evidence at the dispositional phase, "the emphasis appropriately shifts from the conduct of the parent to the best interest of the child." *In re Romance M.*, 229 Conn. 345, 356–57, 641 A.2d 378 (1994). The criteria mandated for review by General Statutes § 17a-112 (e) are as follows: (1) The timeliness, nature, and extent of services offered by the commissioner: After the father was located, the

commissioner offered visitation services to the respondent father. He did not use the visitation services offered. The respondent father indicated that he did not need assistance with substance abuse.

(2) The terms of any court order entered into and the extent to which the parties have fulfilled their expectations: The respondent father's expectations included remaining drug free, maintaining adequate income and housing, visiting Michael as often as allowed, and participating in counseling. Certainly the respondent father has not visited Michael as often as allowed.

Any income that the respondent had was not tendered toward any gifts or support for Michael. There is evidence that the respondent father has had his problems with drug addiction. At the trial, he did not establish that he had conquered his addiction, or that he had obtained adequate housing.

(3) The feelings and emotional ties of the child with respect to his parent, and with any person who has exercised physical care, custody or control of the child: Michael is bonded significantly to his foster mother, and he wishes to remain in her physical care, custody and control. Michael wishes to visit with his father. Michael believes that his father loves him.

(4) The age of the child: Michael is twelve years of age.

(5) The efforts the parent has made to adjust his circumstances, conduct or conditions to make it in the best interest of the child to return him to his home in the foreseeable future: The respondent father has undertaken insufficient efforts to adjust his circumstances, conduct or conditions to qualify for a finding that Michael's return to him would be in the latter's best interest.

(6) The extent to which a parent has been prevented from maintaining a meaningful relationship with the

child by the unreasonable act or conduct of any person or by the economic circumstances of the parent: The evidence proves beyond cavil that the respondent father was not prevented by anyone from establishing and maintaining a meaningful relationship with his son. The evidence is overwhelmingly clear that he did not take advantage of the opportunities he had to contact or visit with his son, or to change his conduct so that he would be available to him.

## III

### ORDER TERMINATING PARENTAL RIGHTS

For the foregoing reasons, the court finds by clear and convincing evidence that the termination of the respondent father's parental rights is in Michael's best interest. Accordingly, the court hereby terminates the respondent father's parental rights in Michael, and appoints the commissioner as Michael's statutory parent. Furthermore, the court hereby orders the commissioner to file the appropriate written reports, as required by state and federal law, that show her efforts to effect permanent placement of young Michael.