[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PROCEEDING SEEKING TERMINATION OFPARENTAL RIGHTS
On December 3, 1996, the Commissioner of the Department of Children and Families (Commissioner or DCF) filed Petitions for the Termination of the Parental Rights of the respondents Cathy R., mother, and Michael R., father of their children, Joseph and Daniel. The two grounds of the petition are 1) failure of the mother to rehabilitate; and 2) abandonment by the father.
A. ADJUDICATORY FINDINGS
1. Failure to rehabilitate
The authority of the Superior Court to terminate parental rights on the ground of the failure of a parent to change her or his behavior after a finding by the court is controlled by statute.
Conn. Gen. Stat. § 17a-112 (c)(3)(B) states that
 The Superior Court . . . may grant a petition [to terminate parental rights] if it finds by clear and CT Page 10944 convincing evidence that . . . the parent of a child who has been found by the Superior Court to have been neglected in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."
On July 29, 1994, the Commissioner filed a Neglect Petition seeking the Commitment of Joseph R., then 4 years of age, and of Daniel, then age 3. The petition was granted by the court on July 29, 1994 which then committed them to the custody of the Commissioner for an eighteen-month term. In addition, the court at that time articulated the following parental expectations as conditions which would facilitate the revocation of commitment: a) keep all appointments set by or with DCF; b) keep whereabouts known to DCF and their attorney; c) attend and participate in drug and alcohol counseling d) visit the children as often as DCF permits; e) secure and maintain adequate housing and income; and f) no substance abuse.
The order of commitment was extended on more than one occasion. The present extension of commitment is scheduled to expire on January 17, 1998.
Respondent Cathy R.'s Compliance with Expectations
The court will now review respondent mother's compliance with the expectations which flowed from the aforesaid disposition of the Neglect Petitions.
On December 22, 1994, minors Joseph and Daniel R. were returned to the care of their mother, Cathy R., since she had by that date complied with the foregoing court expectations. Unfortunately, Cathy R. on April 5, 1995 jumped from her mother's second story window, prompting the return of the children to DCF custody.
After the return of the children to foster care, respondent mother's further compliance with the expectation as to a) substance abuse, and b) visitation gained added significance. A review as to each of these expectations follows.
a) Expectation as to Substance Abuse
CT Page 10945
While at the Hospital of St. Raphael following her jump from the window on April 5, 1995, respondent Cathy R. informed DCF that she used drugs in February and March of 1995. She reported an addiction to heroin. In June of 1996 respondent Cathy R. entered and completed the 45-day portion of the Star program for drug treatment at the Connecticut Valley Hospital; however, she did not follow the recommendation that she enter a half-way house. However, respondent mother did move in with a former boyfriend with whom she sniffed heroin.
In March of 1996 the respondent and sought further recovery through a Christian home program known as the Walter Hogan program, situated in New York. However she was dismissed from this program for smoking a cigarette. Subsequently, respondent Cathy R. entered Guenster House — another drug treatment program. She left that program in February of 199. To date she has not completed drug treatment. At the trial in this case, Dr. Bruce Freedman, a psychologist who interviewed respondent Cathy R., testified that treatment for her drug addiction would require an additional two-year period, if she would accept such treatment. The court so finds.
b. Expectation as to visitation with her Children
Although visitation with the minor children were at frequent intervals when they occurred at the home of the maternal grandmother, respondent mother had visited the children only four times in the six month period ending in June of this year.
From the foregoing, the court finds by clear and convincing evidence that respondent Cathy R. has failed to rehabilitate herself within the meaning of our statute on child protection.
2. Abandonment by Father
Conn. Gen. Stat. § 171A-112 (c) (3) (A) authorizes the Superior Court to terminate the parental rights of a parent when "[t]he child has been abandoned . . . in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." Applying this standard, the court notes that minors Joseph and Daniel last saw their father Michael R. in January of 1996. On April 28, 1997, he signed a consent form as to each child in which he stated his agreement to the termination of his parental CT Page 10946 rights. Unfortunately, respondent father has had a substantial drug history.
Applying the foregoing standard, the court finds by clear and convincing evidence that father Michael R. has abandoned the children, Joseph and Daniel.
B. DISPOSITIONAL FINDINGS
The obligation of the court now turns to whether termination of parental rights is in the best interest of the children in this case. In re Romance M., 229 Conn. 345, 356-57 (1994). Conn. Gen. Stat. § 17a-112(e) requires that the court conduct the review of the factors that follows.
 1. Timeliness, Nature, and Extent of Services offered by the Commissioner
Immediately upon taking the children the Commissioner offered the parents services for drug treatment and counseling. As early as July 29, 1994, the parents signed court-ordered expectations in which they pledged that they would take advantage of these services. Furthermore, the parents pledged to visit with their children as often as DCF permitted. These expectations were on-going at all material times.
 2. Whether DCF made reasonable Efforts to reunite the Family
The court finds that DCF made reasonable efforts to reunify the family by offering the parents opportunities to undergo meaningful drug treatment, and by offering them visitation and counseling.
 3. The Terms of any applicable Court Order agreed upon by the Agency and Parent, and the Extent to which there has been Compliance with the Order
Respondent mother and respondent father entered into an agreed-upon order on July 29, 1994, which was thereafter renewed by the court on January 7, 1996. The agreed-upon order committed the parents to drug treatment, counseling, as well as visitation. The parents have not completed drug treatment nor counseling. Furthermore, the parents have not visited the children on a CT Page 10947 consistent basis.
 4. The Feelings and emotional Ties of the Children with Respect to their Parents, and with any Person Who has exercised physical Care, Custody or Control of the Children
Minors Joseph and Daniel have mixed feelings about their mother. Joseph regards his foster parents as his psychological parents. Daniel has more behavioral problems than Joseph. Daniel wishes his mother would stop using drugs. The boys show too much damage and too many conflicts with the mother to have a good chance of future resolution. The father has abandoned these children.
5. The Ages of the Children
Joseph, age 7, was born on December 67, 1989. Daniel, age 6, was born on February 22, 1991.
 6. The Efforts the Parents have made to adjust their Circumstances, Conduct or Conditions to make It in the best Interest of the Children to return to their Home in the Foreseeable Future
Respondents mother and father attended drug treatment. Neither parent has completed drug treatment. Neither parent has been consistently visiting the children.
 7. The Extent to which a Parent has been prevented from maintaining a meaningful Relationship with the Child by the unreasonable Act or Conduct of any Person or by the economic Circumstances of the Parent
The court finds that there is no evidence that any person or circumstance, outside of parental control, prevented maintaining a meaningful parental relationship with the children in this case.
C. ORDER TERMINATING PARENTAL RIGHTS
For the foregoing reasons, the court finds by clear and convincing evidence that the termination of the parental rights CT Page 10948 of respondent father and of respondent mother is in the best interest of minors Joseph and Daniel. Accordingly, the court hereby terminates the parental rights of father Michael R. and of mother Cathy R. as to young Joseph and Daniel.
In addition, the court hereby appoints the Commissioner as the statutory parent of the aforesaid children, and orders the Commissioner to file the appropriate written reports, required by state and federal law, which show her efforts to effect permanent placement of these children.
Clarance J. Jones, Judge