[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PROCEEDING FOR TERMINATION OF PARENTAL RIGHTS
The Commissioner of the Connecticut Department of Children and Families (DCF) has filed the petition in this case by which she seeks to terminate the parties' parental rights to their minor child. The termination petition was presented on three grounds: a) abandonment by mother and father; b) failure of the mother and of the father to rehabilitate; and c) no-ongoing parent-child relationship with either parent.
This case centers upon four-year old Tosj B., born on October 1997, his mentally troubled mother, Corie B., and an absent putative father, Reginald V. On June 15, 2000, Tosj B. was adjudicated neglected and committed to DCF. On May 14, 2001 — approximately one month prior — the court found that reasonable efforts to prevent the removal of Tosj B. from the care of his parents were made by the state. The petition to terminate the rights of the parents was filed by the Commissioner of DCF on December 21, 2000.
Having heard the evidence and legal arguments adduced in this case, the court makes the findings and enters the orders hereinafter presented. However, before addressing this matter further, the court notes that mother Corie B.' was found to be mentally incompetent to assist her counsel at trial, and a guardian ad litem was present to protect her interests, and spoke on her behalf in this proceeding. CT Page 321
 A. Adjudicatory Findings
1. Failure to rehabilitate
The authority of the Superior Court to terminate parental rights on the ground of the failure of a parent to change her or his behavior after a finding by the court is controlled by statute.
Connecticut General Statutes Section 17a-112 (1) states that in part that
 [t]he Superior Court . . . may grant a petition [to terminate parental rights] if it finds by clear and convincing evidence that . . . the parent of a child who has been found by the Superior Court to have been neglected in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ."
As stated earlier, the filing of this termination of parental rights case was preceded by an June 15, 2000 adjudication in a Neglect proceeding that the mother and putative father neglected to provide proper parenting for minor Tosj. Respondent Corie B. was diagnosed as suffering from mental illness and a substantial addiction to drugs. In addition, she found herself challenged by her difficulty in maintaining stable housing. In that Neglect proceeding minor Tosj had been taken from her for his safe keeping by DCF with court approval. Tosj's putative father was not a resource for him. While that Neglect case was pending specific steps were issued by the court to respondent Corie B. preparatory to her seeking Tosj's return, so that she could have avoided an adjudication of neglect and have avoided Tosj's commitment to DCF.
Specific Steps
The specific steps, issued in the Neglect proceeding on June 11, 1999, imposed upon Corie B. the following charges:
a) keeping all appointments set by or with DCF;
 b) participation in individual and parenting counseling, addressing mental health concerns in order to effectively parent;
CT Page 322
c) substance abuse assessment and treatment;
 d) securing and maintaining adequate housing and income; and
e) no involvement with the criminal justice system.
Although DCF offered Corie B services to enable her to meet these steps, she did not fulfill the expectations of these steps. While Corie B. attended some mental health counseling to which DCF referred her, she did not complete the counseling nor take the medicine necessary to address her mental health issues. One of her therapists found that while Corie B. is cognitively bright, her intellectual ability is eclipsed by her mental symptoms. The mental health professionals diagnosed her from time to time as being psychotic. DCF referred Corie B. to drug treatment programs which she did not complete. Her unstable housing made it difficult for DCF to maintain contact with her. Furthermore, although she held numerous jobs, she was unable to maintain secure employment and did not pursue obtaining disability income to which her therapist felt she was entitled. She has been further involved with criminal activity
2. Abandonment
Connecticut General Statutes Section 17a-112 (j) states in part that "[t]he Superior Court . . . may grant a petition [to terminate parental rights] where . . . the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."
a. Abandonment by Putative Father
On March 21, 2001, the court entered a default against Reginald V., Tosj B's putative father, and found that he had abandoned Tosj B.
b. Abandonment by Corie B.
In support of her claim of abandonment by respondent Corie B., the Commissioner presented evidence establishing that mother Corie B. has not shown a reasonable degree of interest, concern or responsibility as to the Tosj's welfare. In this regard, it is noted that the initial Order of Temporary Custody of June 11, 1999, was based upon observations of Corie B. exposing Tosj to imminent physical harm.
DCF also presented evidence establishing that since Tosj has been in its custody, Corie B. has not visited with her son on any consistent basis, although she was allowed to have weekly visits with him beginning CT Page 323 in June of 1999. Due to her incarceration Corie B. was not able to start her supervised visitation with Tosj on December 21, 1999. However, she did attend twelve of twenty supervised visits after January 19, 2000. Scheduled supervised visits were terminated due to Corie B.'s inconsistency. Corie B. has not visited with Tosj since August 24, 2000. On December 27, 2000 Corie B. informed DCF that she did not want visits with Tosj since she could not have him with her on a full-time basis.
The Commissioner also demonstrated that respondent Corie B. has not maintained contact with Tosj through cards, letters or other correspondence.
3. No on-going Parent-Child Relationship with the Mother
The court finds that Corie B.'s inconsistency of and later voluntarily stopping visitation with Tosj has in substantial part resulted in the absence of a parent-child relationship with him. It is telling that Tosj calls his foster parents mother and father.
 Conclusion from Adjudicatory Findings
From the foregoing, the court finds by clear and convincing evidence that Corie B. and Reginald V. have abandoned minor Tosj. The court also finds by clear and convincing evidence that Corie B. has failed to rehabilitate herself, as that concept is used in the statute. The court further finds by clear and convincing evidence that an on-going parent-child relationship does not exist between minor Tosj and Corie B., nor does it exist between minor Tosj and Reginald V.
 B. Dispositional Findings
The court must now turn its attention to whether termination of parental rights is in the best interest of minor Tosj. In re Romance M.,229 Conn. 345, 356-57 (1994). In making this decision the legislature directs the court to make and consider findings in the delineated areas which follow.
 1. Timeliness, Nature and Extent of Services offered by DCF for Reunification of Family
By June 11, 1999 — the date on which the court entered an Order of Temporary Custody, transferring the legal custody of Tosj from his parents to DCF, DCF had offered or made available opportunities for Corie B. to obtain the following: a) housing, b) transportation for visitation of Tosj, c) treatment for her abuse of additive substances, d) treatment for her mental health, and e) family counseling. DCF also offered CT Page 324 extensive supervised visitation of Tosj. DCF continued to offer a plethora of services to Corie B. throughout the pendency of the Neglect case, and through most of the duration of this Termination case in an effort to provide to Corie B. an opportunity for reunification. It is noted that DCF referred Corie B. to approximately twenty (20) agencies, the majority of which provided services to her in this regard. It is unfortunate that she did not benefit from the services.
The whereabouts of Reginald V. were not known until July 2000. He is residing in Wilmington, N.C. An Interstate Compact assessment discloses that his home was not an appropriate placement for minor Tosj. Reginald V. admits to the recreational use of marijuana, and he has two pending felony charges. Although requested to do so, Reginald V. has not complied with paternity testing.
2. Whether DCF made reasonable Efforts to reunited the family
The court finds that DCF made reasonable efforts to reunify Corie B. with minor Tosj by offering her opportunities to undergo meaningful drug treatment, providing her with psychological and psychiatric evaluations and treatment, referring her to agencies to assist her with housing and employment opportunities, and by offering her opportunities to visit with Tosj.
Reginald V. has expressed an interest in having custody of Tosj. However, the court finds his expression of such interest to be diminished by his non-compliance with paternity testing. Thus, the court finds that DCF was relieved of any duty to provide services to him.
 3. The Terms of any applicable Court Order agreed upon by the Agency and Parent, and the extent to which their has been Compliance with the Order
Inasmuch as the location of the putative father was not ascertained until after an adjudication of the Neglect Petition, specific-step orders were not applicable to him. Apparently Corie B. did not sign a specific-step document; however, it is clear that she was aware of the court's order, dated June 11, 1999, setting out the aforesaid specific steps. Corie B's noncompliance in this regard is delineated in Part A-1 of this memorandum of decision.
4. The Feelings and emotional Ties of Tosj to his Parents
Tosj does not have positive feelings of emotional ties to his parents. He refers to his foster parents as mother and father. CT Page 325
5. The Age of the Child
Tosj is four years of age.
 6. The Efforts mad by the Parents to adjust their Circumstances, Conduct or Conditions so as to promote Reunification
The parents have not made any meaningful efforts to adjust their circumstances, conduct, or conditions so as to promote reunification. Corie B.'s efforts in this regard are set out in Part I-A of this memorandum of decision.
 7. The Extent to which the Parents have been prevented from having a meaningful Relationship with their Child
The parties have not been prevented from having a meaningful relationship with Tosj.
 C. Order Terminating Parental Rights
For the foregoing reasons, the court finds by clear and convincing evidence that termination of the parental rights of respondents Corie B. and Reginald V. as to minor Tosj B. is in his best interest. Accordingly, the court hereby terminates said parental rights.
In addition, the court hereby appoints the Commissioner of the Department of Children and Families as the statutory parent of Tosj B., and orders the Commissioner to file the appropriate written reports, required by law, which show her efforts to effect permanent placement.
Clarence J. Jones, Judge